IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-276-D

| | |
|---|---|
| VIOLA B. TOMLIN, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-25, DE-27] pursuant to Fed. R. Civ. P. 12(c). Claimant Viola Tomlin ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB").[1] The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be granted, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on September 2, 2010, alleging disability beginning December 31, 2005. (R. 24, 168-73). Her

---

[1] Claimant filed her application under the name Viola Brown. (R. 170). Her current name, as stated at the administrative hearing, is Viola Brown Tomlin. (R. 45).

claim was denied initially and upon reconsideration. (R. 24, 70-81, 83-97). A hearing before the Administrative Law Judge ("ALJ") was held on May 10, 2012, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 41-69). On June 22, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 24-34). On January 8, 2013, the Appeals Council denied Claimant's request for review. (R. 6-11). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained

2

his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of the treating physician's opinion and (2) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s Mem. [DE-26] at 1.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings[2]

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 26). Next, the ALJ determined Claimant had the following severe impairments: unspecific arthropathies, diabetes, hypertension, hernia, and osteoarthritis. *Id.* The ALJ also found Claimant had nonsevere impairments of hernia repair, iron-deficiency anemia, depression and anxiety symptoms. (R. 26-27). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[3] with occasional climbing of ramps and stairs, occasional stooping, kneeling, crouching, and crawling, and no climbing of ladders, ropes, or scaffolds. (R. 27). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 28). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work as a collection clerk. (R. 33).

---

[2] At the administrative hearing, Claimant moved to amend her alleged onset date from December 31, 2005, to January 30, 2008, which the ALJ allowed. (R. 45-46). However, the ALJ's decision still cites December 31, 2005, as the relevant date.

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

**B.     Claimant's Testimony at the Administrative Hearing**

At the time of Claimant's administrative hearing, Claimant was 52 years old and unemployed. (R. 46). Claimant has completed 154 college credit hours and is two courses short of obtaining her degree. (R. 48). Claimant was last employed with the North Carolina Department of Revenue for approximately two years, where her duties included collecting taxes and revenues and contacting people to setup payment arrangements and child support payments. (R. 49). Claimant's past work experience also includes working in collections at various agencies. *Id.*

Claimant explained numerous medical conditions supporting her disability claim and her inability to work full-time. These medical conditions include eye and ear irritations, allergies of the nose and sinus, migraine headaches, back inflammation and nerve damages, sugar diabetes, colon pain, IBS, bleeding ulcers, constipation, lactose intolerance, and hernias. (R. 50-52). Claimant takes medication for her diabetes, but still has pain in her feet and back resulting from the diabetes. (R. 52). Claimant has been diagnosed with neuropathy. *Id.* To manage the pain in her feet, Claimant takes gabapentin and hydrocodone and lies down and elevates her feet. (R. 52-53). This medication causes Claimant to feel drowsy, dizzy, and fatigued. (R. 55). Claimant is prescribed three TENS units for pain in her feet, legs, and back that she uses once daily to relieve pain. (R. 54). Claimant has also recently been prescribed a wheelchair. (R. 57).

Claimant has had multiple hernia repairs and has been instructed by her hernia physician not to lift anything. (R. 58). Claimant also suffers from diverticulitis and has had several polyps removed from her colon. (R. 59). Claimant is prescribed Xanax, Zoloft, and a third medication to deal with anxiety and depression symptoms. *Id.* Claimant testified that she experiences pain from her diabetes, neuropathy, and hernia repairs and is often forced to lie down and sleep when

5

experiencing certain symptoms. (R. 50-52). Claimant further testified that she is only able to stand or walk for approximately ten minutes, and only if she is able to hold onto something, and that she is only able to ride in a wheelchair for up to 25 minutes before she becomes uncomfortable. (R. 57).

C.    **Vocational Expert's Testimony at the Administrative Hearing**

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 63-68). After the VE's testimony regarding Claimant's past work experience (R. 63-64), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed four hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work with occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, and occasional stooping, kneeling, crawling, and crouching, with only occasional exposure to unprotected heights and moving mechanic parts. (R. 64). The VE responded that such a hypothetical individual could, in fact, perform Claimant's past work. *Id.* The ALJ next asked the VE to assume the same hypothetical, with the additional requirement of being limited to simple, repetitive tasks which the ALJ defined as jobs with a specific vocational profile level of no greater than one or two and work in only low-stress environments (work that does not involve production pace or work deadlines and allows the claimant to work at their own pace and have a predictable schedule). (R. 64-65). The VE responded that such a hypothetical individual could not return back to any of the past jobs described as actually performed or as generally performed within the national economy. (R. 65). The ALJ next asked the VE whether jobs exist in significant numbers in the economy that the prior hypothetical individual could perform. (R. 65). The VE responded that the hypothetical individual could perform the jobs of

6

cashier (DOT # 211.462-010), office helper (DOT # 239.567-010), or mail sorter (DOT # 209.687-026). *Id.* Next, the ALJ asked if those same positions would be available to the hypothetical individual with the additional limitation of requiring a hand-held or wheeled assistive device with prolonged ambulation, walking on uneven terrain, or ascending and descending slopes. *Id.* The VE affirmed that the same positions would be available. *Id.* Last, the ALJ then asked the VE to consider whether there would be any positions within the regional or national economy for the hypothetical individual with those same limitations, but now, because of the combination of impairments, the individual is unable to sustain an eight-hour work day for a forty-hour work week. (R. 65-66). The VE responded in the negative. (R. 66).

Claimant's attorney next questioned the VE. First, Claimant's attorney asked the VE how long the hypothetical individual would need to use a wheelchair during the day for the individual to be limited to sedentary work. (R. 66). The VE responded that so long as the individual could still stand or sit, it would not have a significant impact on the occupations. *Id.* Claimant's counsel next asked whether an individual unable to work for six hours standing or walking could perform light work. (R. 66-67). The VE responded that most light jobs would be precluded. (R. 67). The VE was further asked how such a limitation would impact the three jobs listed previously for the ALJ. *Id.* The VE responded that the mail sorter job would be precluded and the number of available cashier jobs would decline, but that the office helper would still apply. *Id.* Last, Claimant's attorney asked whether the need to take excessive breaks during the work day would preclude all employment and the ALJ responded in the affirmative. (R. 67-68).

## V. DISCUSSION

**The ALJ's evaluation of treating physician opinions.**

7

Claimant contends the ALJ failed to address the opinion of Claimant's treating rheumatologist, Dr. Harner, warranting a remand of this case. Pl.'s Mem. at 10-11. The Commissioner argues that the ALJ's failure to expressly consider Dr. Harner's opinion, if error, was harmless. Def.'s Mem. [DE-28] at 13. The court finds that the ALJ did not adequately indicate or explain the weight, if any, he gave to the opinion of this treating physician, and the case requires remand.

The rules regarding the weight to be accorded medical opinion evidence and the ALJ's duty to explain such weight are well established. Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.* Similarly, "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); *see Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted). However, the ALJ must give "good reasons" for the weight assigned to a treating source's opinion. *See* 20 C.F.R. § 404.1527(c)(2); *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir.

2005) (per curiam). Where a physician presents relevant evidence to support his opinion, his opinion is entitled to more weight. 20 C.F.R. § 404.1527(c)(2).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

"While the ALJ must give a treating physician's medical opinions special weight in certain circumstances, the ALJ is under no obligation to give a treating physician's legal conclusions any heightened evidentiary value." *Morgan v. Barnhart*, 142 F. App'x 716, 722 (4th Cir. 2005) (unpublished) (citations and quotations omitted); *see* 20 C.F.R. § 404.1527(e)(3). However, the ALJ is not free to ignore a treating physician's legal conclusions and must still "'evaluate all the evidence . . . to determine the extent to which the [treating physician's legal conclusion] is supported by the record.'" *Morgan*, 142 F. App'x at 722 (quoting SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996)) (alteration in original). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013

9

WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citing *Hill v. Astrue*, 698 F.3d 2253, 1159-60 (9th Cir. 2012); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747, 750 (6th Cir. 2007); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006)). However, in some cases, "the failure of an ALJ to explicitly state the weight given to a medical opinion constitute harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." *Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at *6 (E.D.N.C. July 9, 2013) (adopting magistrate judge memorandum and recommendation) (citations and quotations omitted).

Here, the treating opinion at issue appeared in a 6-page questionnaire dated September 9, 2010, wherein Dr. Harner, a treating rheumatologist, opined that Claimant is incapable of a "low-stress" job because of constant pain, can never lift less than 10 pounds, and would be absent from work more than four days per month.[4] (R. 261-66). Claimant correctly points out that nowhere in the decision does the ALJ discuss or refer to the 2010 opinion by Dr. Harner, although the decision contains a summary of the medical treatment records from this provider with specific citations to the exhibits where his findings are located. *See* (R. 29-30) (discussing Dr. Harner's treatment records from July 31, 2008 (R. 452), May 1, 2009 (R. 461), August 25, 2009 (R. 465), April 5, 2011 (R. 695), and December 14, 2011 (R. 727)). However, despite the ALJ's discussion of Dr. Harner's medical evidence in his decision, there is no indication, expressly or otherwise, of the weight the ALJ may have assigned to this opinion and the reasons for any weight assignment. The court agrees with Claimant that the ALJ failed to satisfy his obligation of evaluating a treating physician opinion by failing to indicate the weight he assigned the opinion, and the court is not able to determine definitively whether the ALJ considered this

---

[4] This opinion appeared as part of Exhibit 5E and was not part of the medical evidence section of the record appearing in Exhibits 1F-38F.

10

opinion by Dr. Harner.[5] *See Moreno v. Colvin*, No. 4:12-CV-143-D, Order [DE-31] (E.D.N.C. Sept. 6, 2013) (remanding case for ALJ's failure to mention treating physician opinion given importance of properly analyzing physician opinions); *Bryant*, 2013 WL 3455736, at *6 (adopting magistrate judge recommendation remanding case based on the evaluation of treating opinions because the ALJ "fail[ed] to indicate . . . the weight he accorded all opinions . . . and the reasons for such weight").

First, Dr. Harner's opinion is that of a treating physician and the court cannot overlook the "importance of analyzing a treating physician's opinion." *Moreno*, No. 4:12-CV-143-D, Order [DE-31]; *cf. Love-Moore*, 2013 WL 5350870, at *2 (finding the ALJ's failure to expressly weigh the opinion of a non-treating physician was harmless error). This is true despite the ALJ's summary of Dr. Harner's medical evidence because that summary does not enable the court to discern what weight, if any, was afforded the opinion. *Bryant*, 2013 WL 3455736, at *6 (adopting magistrate judge recommendation remanding case for failure to properly evaluate treating opinions despite a summary of the physicians' evidence). Moreover, the fact that Dr. Harner's opinion more closely resembles a legal conclusion, in part, does not allow the ALJ to simply ignore the opinion without explanation. *Morgan*, 142 F. App'x at 722 (quoting SSR 96-5p, 1996 WL 374183, at *3). Further, and of keen importance, Dr. Harner's opinion tends to support Claimant's contention of disability and counter the ALJ's own disability determination. *See Dew ex rel K.W. v. Colvin*, No. 4:12-CV-129-D, 2013 WL 4523617, at *6 (E.D.N.C. Aug. 27, 2013) (adopting magistrate judge recommendation remanding case where ALJ failed to consider treating medical opinion that countered ALJ's determination); *Bryant*, 2013 WL 3455736, at *6 (adopting magistrate judge recommendation remanding case for failure to

---

[5] In the section of the ALJ's decision where the ALJ explicitly addresses opinion evidence, he fails to mention the opinion of Dr. Harner. (R. 32-33).

11

properly evaluate treating opinions where the opinions were not consistent with the ALJ's disability determination); *cf. Love-Moore*, 2013 WL 5350870, at *2 (finding the ALJ's failure to weigh the opinion of a non-treating physician was harmless error where opinion was consistent with the ALJ's determination). The court recognizes the Commissioner's argument that the ALJ's rejection of a similar opinion from Dr. Cook, for reasons the Commissioner contends are equally applicable to Dr. Harner's opinion, renders this harmless error. Def.'s Mem. at 14. However, the court does not find this sufficient to infer that the ALJ would have assigned little or no weight to Dr. Harner's opinion as well, leaving the ALJ's decision unchanged. *Moreno*, No. 4:12-CV-143-D, Order [DE-31] (rejecting magistrate judge's finding of harmless error where ALJ considered other conclusions consistent with treating physician's opinion); *cf. Yuengal v. Astrue*, No. 4:10-CV-42-FL, 2010 WL 5589102, at *6-9 (E.D.N.C. Dec. 17, 2010) (finding harmless error for failure to consider the opinion of a treating psychiatrist with whom Claimant had ceased treatment when the ALJ evaluated an identical opinion from the psychiatrist who handled Claimant's subsequent psychiatric care). Both Dr. Cook's and Dr. Harner's opinions appear in a RFC questionnaire; however, Dr. Harner's questionnaire contains additional conclusions not present in Dr. Cook's questionnaire and the physicians considered different diagnoses, which ultimately render the opinions distinguishable.[6] (R. 261-66, 740-43). Specifically, Dr. Harner treated Claimant for osteoarthritis and degenerative disc disease, whereas Dr. Cook largely treated Claimant for her diabetes, high blood pressure and cholesterol. (R. 261, 740); *see also* (R. 315) (evidencing Dr. Cook treating as a primary care physician for issues of diabetes and hypertension); (R. 727) (evidencing Dr. Harner treating Claimant for osteoarthritis, disc disease, and rotator cuff syndrome). Dr. Harner separately opined that

---

[6] Dr. Cook's questionnaire appears to be missing certain questions. *See* (R. 740-43).

12

Claimant is likely to miss more than four days of work per month. (R. 265).

For the foregoing reasons, the ALJ's failure to mention or weigh the medical opinion of Dr. Harner requires remand. *Moreno*, No. 4:12-CV-143-D, Order [DE-31]; *see also Ladson v. Astrue*, No. 4:11-2565-TER, 2013 WL 655971, at *9 (D.S.C. Feb. 22, 2013) (remanding case for ALJ to address opinions of plaintiff's treating physicians and explain weight accorded to them). On remand, the ALJ should consider the opinion of Dr. Harner, and if the ALJ finds the opinion should be discounted, he should clearly articulate his reasons based on the relevant regulatory factors. Further, where an ALJ improperly fails to weigh such medical opinions and where those opinions are "integral in determining Claimant's RFC and credibility, the ALJ should reevaluate both the RFC and credibility determinations on remand." *Prather v. Colvin*, No. 5:12-CV-171-FL, 2013 WL 4806958 (E.D.N.C. Sept. 9, 2013) (citing SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). Therefore, the court does not address Claimant's remaining RFC argument as it is also recommended that the ALJ reconsider the RFC determination on remand.

## VI. CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-25] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-27] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and,

except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 17 day of July 2014.

/s/ R. Jones<br>
Robert B. Jones, Jr.<br>
United States Magistrate Judge